UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| MICHAEL COY BENNETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 15-2486-JDT-cgc |
| | ) | |
| F/N/U ROSS, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER DENYING MOTION TO APPOINT COUNSEL, DISMISSING CLAIMS,
CERTIFYING AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH
AND NOTIFYING PLAINTIFF OF APPELLATE FILING FEE

On July 20, 2015, Plaintiff Michael Coy Bennett ("Bennett"), who is currently an inmate at the Riverbend Maximum Security Institution ("RMSI") in Nashville, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 in the U.S. District Court for the Middle District of Tennessee, accompanied by a motion to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) The complaint concerns Bennett's previous confinement at the West Tennessee State Penitentiary ("WTSP") in Henning, Tennessee. In an order issued July 23, 2015, U.S. District Judge Todd J. Campbell granted leave to proceed *in forma pauperis*, assessed the civil filing fee pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(a)-(b), and transferred the case to this district, where venue is proper. (ECF No. 5.) The Clerk shall record the Defendant as Sergeant First Name Unknown ("FNU") Ross.

## I. The Complaint

Bennett alleges that on July 10, 2014, while he was on his way to lunch at WTSP, he was stopped by Defendant Ross who inquired about Bennett being "jumped" the previous evening by other inmates. (ECF No. 1 at 4.) Defendant Ross stopped Bennett because he had noticed Bennett's black eye and had reviewed the security camera footage from the previous day which showed that Bennett was assaulted by inmates who were members of the Aryan Nation. (*Id.*) Consequently, Ross wanted to put Bennett in segregation for his own protection. (*Id.*) Bennett walked with Defendant Ross to operations, where Bennett explained what happened the previous day and stated that he did not fear for his life, he only needed to be relocated to a different pod in order to avoid future altercations. (*Id.*) Bennett alleges that in response, Defendant Ross told him that since he did not fear for his life and since he was a "big tough guy," he could wait to be relocated later in the week on the proper move day. (*Id.*)

Within thirty minutes of the conversation with Defendant Ross, Bennett went to the center core of Unit 3 to get a cell change request form, waited in the breezeway for inmate James Bird to return from his meal so he could sign the form allowing Bennett to move in with him, and then was stabbed by inmate Justin Lawson, who was one of the two inmates who had assaulted him the previous day. (*Id.* at 4-5.) Bennett contends that Defendant Ross should have moved him, regardless of Bennett's own statements, because Defendant Ross was aware of the danger to Bennett. (*Id.* at 5.)

Ross seeks monetary restitution for pain and suffering as well as for mental and emotional damages. (*Id.* at 8.)

On January 25, 2016, Bennett filed a motion to appoint counsel. (ECF No. 9.) Pursuant to 28 U.S.C. § 1915(e)(1), the "court may request an attorney to represent any such person unable to employ counsel." However, "[t]here is no constitutional or . . . statutory right to counsel in federal civil cases" *Farmer v. Haas*, 990 F.2d 319, 323 (7th Cir. 1993), and "§ 1915[(e)(1)] does not authorize the federal courts to make coercive appointments of counsel" to represent indigent civil litigants, *Mallard v. United States Dist. Court*, 490 U.S. 296, 310 (1989). Generally, a court will only appoint counsel in exceptional circumstances. *Willett v. Wells*, 469 F. Supp. 748, 751 (E.D. Tenn. 1977). Although "no comprehensive definition of exceptional circumstances is practical," *Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982), courts resolve this issue through a fact-specific inquiry. *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986). Examining the pleadings and documents in the file, the Court analyzes the merits of the claims, the complexity of the case, the *pro se* litigant's prior efforts to retain counsel, and his ability to present the claims. *Henry v. City of Detroit Manpower Dep't*, 763 F.2d 757, 760 (6th Cir. 1985); *Wiggins v. Sargent*, 753 F.2d 663, 668 (8th Cir. 1985).

As a general rule, counsel should be appointed in civil cases only if a litigant has made "a threshold showing of some likelihood of merit." *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 174 (2d Cir. 1989). Because Bennett has not met the threshold showing likelihood of success, the motion to appoint counsel is DENIED.

## II. Analysis

A. <u>Screening and Standard</u>

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); see also 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the court applies standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681) (alteration in original). "[P]leadings that . . . are no more than conclusions . . . are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could

satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally. Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted." *Hill*, 630 F.3d at 470 (citing *Neitzke v. Williams*, 490 U.S. 319, 325, 328-29 (1989)).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give "judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327, 109 S. Ct. 1827 (interpreting 28 U.S.C. § 1915). Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, *Iqbal*, 129 S. Ct. at 1949-50, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness. *Neitzke*, 490 U.S. at 327-28, 109 S. Ct. 1827.

*Id.* at 471.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants and prisoners are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, No. 09-2259, 2011 WL 285251, at *5 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)) (alteration in

5

original); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

B.  § 1983 Claim

Bennett filed his complaint on the court-supplied form for actions under 42 U.S.C. § 1983. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

Bennett claims that Defendant Ross failed to protect him from his fellow inmate. For a convicted prisoner such as Plaintiff, such claims arise under the Eighth Amendment, which prohibits cruel and unusual punishments. *See generally Wilson v. Seiter*, 501 U.S. 294 (1991). An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson*, 501 U.S. at 298; *Williams v. Curtin*, 633 F.3d at 383; *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010). The objective component requires that the deprivation be "sufficiently serious." *Farmer*, 511 U.S. at 834; *Hudson*, 503 U.S. at 8; *Wilson*, 501 U.S. at 298.

To satisfy the objective component of an Eighth Amendment claim, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm," *Farmer*, 511 U.S. at 834; see also *Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005), or that he has been deprived of the "'minimal civilized measure of life's necessities,'" *Wilson*, 501 U.S. at 298 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)); see also *Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004). "[E]xtreme deprivations are required to make out a conditions-of-confinement claim." *Hudson*, 503 U.S. at 9.

"'[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners.'" *Leary v. Livingston Cnty.*, 528 F.3d 438, 442 (6th Cir. 2008) (quoting *Farmer*, 511 U.S. at 833); *see also Dellis v. Corr. Corp. of Am.,* 257 F.3d 508, 512 (6th Cir. 2001). To establish liability under the Eighth Amendment for a claim based on failure to prevent harm to a prisoner, a plaintiff must show that the prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer*, 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 79 (6th Cir. 1995). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. Thus,

> [a] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Eighth Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Id.* at 837-38 (citations omitted); *see also Garretson v. City of Madison Heights*, 407 F.3d 789, 796 (6th Cir. 2005) ("If the officers failed to act in the face of an obvious risk of

8

which they should have known but did not, then they did not violate the Fourteenth Amendment."). To show that a corrections officer was deliberately indifferent to the risk that an inmate would be assaulted by another inmate, there must be a showing that the assault was "reasonably preventable." *Dellis*, 257 F.3d at 512 (citing *Babcock v. White*, 102 F.3d 267, 272 (7th Cir. 1996)). The subjective component must be evaluated for each defendant individually. *Bishop v. Hackel*, 636 F.3d 757, 767 (6th Cir. 2011); *see also* I*d.* at 768 ("[W]e must focus on whether each individual Deputy had the personal involvement necessary to permit a finding of subjective knowledge.").

Although Bennett contends that Defendant Ross knew he was in immediate danger of assault from another inmate, the facts as alleged show that Bennett himself reassured Ross that he was not in immediate danger when he told Ross that he did not need to be in protective custody. Thus, Ross did not "draw the inference" that Bennett was at a substantial risk of harm.

For the foregoing reason, Bennett's claim is dismissed for failure to state a claim upon which relief can be granted.

### III. Standard for Leave to Amend

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, No. 12-1403, 2013 WL 646489, at *1 (1st Cir. Feb. 22, 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot

be cured. *Brown*, 2013 WL 646489, at *1; *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every *sua sponte* dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile, then a *sua sponte* dismissal may stand."); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) ("*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile"); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). In this case, because the deficiencies in Bennett's complaint cannot be cured, leave to amend is not warranted.

IV. Conclusion

The Court DISMISSES Bennett's complaint as to the Defendant for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Leave to Amend is DENIED because the deficiencies in Bennett's complaint cannot be cured.

Pursuant to 28 U.S.C. §1915(a)(3), the Court must also consider whether an appeal by Bennett in this case would be taken in good faith. The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The test for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any issue that is not frivolous. *Id.* It would be inconsistent for a district court to determine that a

complaint should be dismissed prior to service on the Defendant, but has sufficient merit to support an appeal *in forma pauperis*. *See Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith.

It is also CERTIFIED, pursuant to 28 U.S.C. §1915(a)(3), that any appeal in this matter by Bennett would not be taken in good faith.

The Court must also address the assessment of the $505 appellate filing fee if Bennett nevertheless appeals the dismissal of this case. A certification that an appeal is not taken in good faith does not affect an indigent prisoner plaintiff's ability to take advantage of the installment procedures contained in § 1915(b). *See McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997), *partially overruled on other grounds by LaFountain*, 716 F.3d at 951. *McGore* sets out specific procedures for implementing the PLRA, 28 U.S.C. § 1915(a)-(b). Therefore, Bennett is instructed that if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in *McGore* and § 1915(a)(2) by filing an updated *in forma pauperis* affidavit and a current, certified copy of his inmate trust account for the six months immediately preceding the filing of the notice of appeal.

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by Plaintiff, this is the second dismissal of one of his cases as frivolous or for failure to state a claim.[1] This

---

[1] Plaintiff previously filed *Bennett v. Matheson*, No. 3:10-cv-263 (E.D. Tenn. June 24, 2010) (dismissed as frivolous and for failure to state a claim).

"strike" shall take effect when judgment is entered.  *Coleman v. Tollefson*, 135 S. Ct. 1759, 1763-64 (2015).

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

                                     s/ **James D. Todd**
                                     JAMES D. TODD
                                     UNITED STATES DISTRICT JUDGE